115 P.3d 698

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Donna May TARAPE, Defendant–Appellant.**

**No. 25636.**

Intermediate Court of Appeals of Hawai'i.

June 14, 2005.

Donna May Tarape, on the briefs, defendant-appellant, pro se.

William B. Heflin, deputy prosecuting attorney, County of Hawai'i, on the briefs, for plaintiff-appellee.

WATANABE, Acting C.J., and LIM, J.; with FOLEY, J., Concurring Separately and Dissenting.

Opinion of the Court by WATANABE, Acting C.J.

Pro se Defendant–Appellant Donna May Tarape (Tarape) appeals from the oral pronouncement by the District Court of the Third Circuit (the district court)[1] on January 13, 2003, memorialized in a written Judgment filed on December 30, 2003, that found her "guilty" of: (1) fraudulent use of vehicle plates, in violation of Hawaii Revised Statutes (HRS) § 249–11 (2001);[2] (2) no no-fault insurance,[3] in violation of HRS § 431:10C–104 (Supp.2004);[4] and (3) delinquent motor vehicle tax, in violation of HRS § 249–10 (2001).[5]

Tarape contends that: (1) there was insufficient evidence to support her "convictions"

1. The Honorable Sandra P. Schutte presided.

2. Hawaii Revised Statutes (HRS) § 249–11 (2001) provides, in pertinent part:

    **Fraudulent use of plates, tags, or emblems and other misdemeanors; penalties.** Any person ... who attaches to and uses on any vehicle plates ... not furnished in accordance with sections 249–1 to 249–13 or 286–53, or who fraudulently uses such number plates ... upon any vehicle other than the one for which the number plates ... were issued ... shall be fined not more than $500.

3. Although Defendant–Appellant Donna May Tarape (Tarape) was charged with the offense of no no-fault insurance, such an offense no longer exists. In 1997, the Hawai'i State Legislature overhauled HRS chapter 431:10C, the motor vehicle insurance law, and replaced statutory references to "no-fault policy" with "motor vehicle insurance policy." 1997 Haw. Sess. L. Act 251, § 14 at 514, 525. Therefore, the offense is more properly referred to as "no motor vehicle insurance policy."

4. HRS § 431:10C–104 (Supp.2004) provides, in pertinent part, currently and as it did at all times during the proceedings below, as follows:

    **Conditions of operation and registration of motor vehicles.** (a) Except as provided in section 431:10C–105, no person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a motor vehicle insurance policy.

    (b) Every owner of a motor vehicle used or operated at any time upon any public street, road, or highway of this State shall obtain a motor vehicle insurance policy upon such vehicle which provides the coverage required by this article and shall maintain the motor vehicle insurance policy at all times for the entire motor vehicle registration period.

    (c) Any person who violates the provisions of this section shall be subject to the provisions of section 431:10C–117(a).

5. HRS § 249–10 (2001) states as follows:

    **Delinquent penalties; seizure and sale for tax.** (a) Any tax imposed by sections 249–1 to 249–13 for any year and not paid when due, shall become delinquent and a penalty shall be added to, and become part of, the delinquent tax. The amount of the delinquency penalty shall be established by the county's legislative body. If the date that the tax is due is a Saturday, Sunday, or legal holiday, the tax shall become delinquent at the end of the next day that is not a Saturday, Sunday, or legal holiday. The director of finance may require the payment of any delinquent tax and penalty as a condition precedent to the registration, renewal, or transfer of ownership of such vehicle. Any vehicle not having the number plates required by sections 249–1 to 249–13, or any vehicle upon which taxes are delinquent as provided in this section, may be seized, wherever found, by the director of finance or by any police officer, and held for a period of ten days, during which time the vehicle shall be subject to redemption by its owner by payment of the taxes due, together with the delinquent penalties and the cost of storage and other charges incident to the seizure of the vehicle. The director of finance, chief of police, or any police officer shall be deemed to have seized and taken possession of any vehicle, after having securely sealed it where located and posted a notice upon the vehicle, setting forth the fact that it has been seized for taxes and warning all other persons from molesting it under penalty provided by section 249–11.

    (b) All vehicles seized and sealed shall remain at the place of seizure or at any other place that the director of finance may direct, at the expense and risk of the owner. If the owner of the vehicle fails to redeem it within ten days after seizure, the vehicle may be sold by the director of finance at public auction to the highest bidder for cash, after giving ten days public notice in the county and by posting notices in at least three public places in the district where the vehicle was seized; provided that the requirements of public auction may be waived when the appraised value of any vehicle is less than $250 as determined by the director of finance or authorized representa-

because: (a) she was not the registered owner of the motor vehicle she was driving on the day she was cited, and (b) the prosecution offered no proof that she committed the offenses with the requisite state of mind; (2) the district court failed to follow the procedural mandates set.forth in HRS § 805–13 (Supp.2004) [6] and require the registered owner of the vehicle that she was driving to be cited and to appear in court; and (3) the district court's "conviction ... constitutes a reversable [sic] plain error."

We reverse in part, and vacate and remand in part.

## BACKGROUND

On the morning of May 9, 2002, County of Hawai'i police officer Norbert Serrao, Jr. (Officer Serrao) observed Tarape driving a 1988 maroon two-door Toyota Tercel sedan with license plate "HYX632" (the Toyota). Because the Toyota had expired safety and weight tax stickers, Officer Serrao pulled Tarape's vehicle over. After conducting a registered owner check of the license plate, Officer Serrao learned that the license plate on the Toyota was assigned to a 1988 black Dodge pick-up truck with a vehicle identification number (VIN) that did not match the Toyota's VIN. Officer Serrao then ran a reg- istered owner check of the Toyota's VIN and learned that the VIN was associated with the Toyota. However, the Toyota's license plate was supposed to be "HAH837," the safety check for the Toyota had expired in October 2001, and the vehicle weight tax for the Toyota had expired in.May 2001.

Officer Serrao reported that "[u]pon stop, [Tarape] coudl [sic] not produce a valid No Fault Insurance Card when asked, stated that she is in process of buying [the motor vehicle] and did not get insurance yet."

Following the traffic stop, Officer Serrao issued Tarape four citations for "traffic crimes": (1) Complaint & Summons No. 1758621MH (Citation 1) for "False License Plate[,]" in violation of HRS § 249–11; (2) Complaint & Summons No. 1758622MH (Citation 2) for "No No Fault Insurance[,]" in violation of HRS § 431:10C–104; (3) Complaint & Summons No. 1758623MH (Citation 3) for "Expired Weight Tax[,]" in violation of HRS § 249–10; and (4) Complaint & Summons 1757560MH (Citation 4),[7] apparently for having an expired safety inspection decal.

At the arraignment hearing on June 12, 2002, Tarape pleaded "not guilty" to the charges alleged by Citations 1, 2, and 3.[8] On

---

tive, in which case the vehicle may be disposed of in the same manner as when a vehicle is put up for public auction and for which no bid is received. The amount realized at the sale, less the amount of the tax and penalty due, together with all costs incurred in giving public notice, storing, and selling the vehicle and all other charges incident to the seizure and.sale, shall be paid to the owner of the vehicle. If no claim for the surplus is filed with the director of finance within sixty days from the date of the sale, the surplus shall be paid into the county treasury as a government realization and all claim to that sum shall thereafter be forever barred.

(c) The owner of any antique motor vehicle shall be exempt from the tax and delinquent penalty imposed under this chapter for the entire period of nonuse; provided that the owner of the antique motor vehicle shall first present to the director of finance a signed and sworn certificate attesting to the antique motor vehicle's period of nonuse.

6. At the time of Tarape's alleged traffic violations, HRS § 805–13(b) (Supp.2004) provided, in relevant part, as follows:

Motor vehicle insurance violation. . . .

(b) In all cases of citation for alleged violations of chapter 431:10C or section 286–116 the court shall require the appearance of the driver cited and the registered owner of the motor vehicle. If the registered owner is not the driver, the registered owner shall be cited by service of the citation on the driver who shall be deemed to be the owner's agent for purposes of service and by naming the owner jointly with the driver in the citation.

7. The original copy of Citation No. 1757560MH (Citation 4) is not contained in the Record on Appeal (the record), and the charge is not listed on the district court's calendar. The only reference to this citation is on the Notice of Entry of Judgment and/or Order, which indicates that "[Plaintiff–Appellee State of Hawai'i] cannot proceed—DSM [ (dismissed) ]."

8. The record does not indicate how Tarape pleaded to Citation 4.

January 13, 2003, the district court[9] found Tarape "guilty" of all three offenses and sentenced her as follows:

> [Citation 1] Fraud Use Vehicle Plates: Fine $250 concurrent with [Citation 2]; ADF $15
>
> [Citation 2] No No–Fault Insurance: Fine $500; ADF$20; DETF$7
>
> [Citation 3] Delinquent Motor Vehicle Tax: Fine $40 concurrent with [Citation 2]; ADF$15

Notice of entry of the district court's written Judgment was filed on December 30, 2003,[10] certifying that the district court found Tarape guilty and sentenced her on January 13, 2003. Tarape filed a timely Notice of Appeal on February 12, 2003. The appeal was assigned to this court on February 9, 2004.

## DISCUSSION

### A. *Tarape's Insufficiency–of–the–Evidence Claims*

. Tarape asserts that there was insufficient evidence adduced to support the district court's judgment "convicting" her of fraudulent use of vehicle plates, operating a motor vehicle with no motor vehicle insurance policy, and delinquent motor vehicle tax.

■ In reviewing the legal sufficiency of the evidence adduced in the trial court, we are required to consider the evidence in the strongest light for the prosecution. *State v. Richie,* 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998). "The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." *Id.* " 'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." *Id.* at 33, 960 P.2d at 1241 (quoting *State v. Eastman,* 81 Hawai'i 131, 135, 913 P.2d 57, 61 (1996)).

■ Additionally, Hawai'i Rules of Appellate Procedure (HRAP) Rule 10(b)(3) requires that "[i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion." HRAP Rule 10(b)(3). Tarape, however, failed to order a transcript of the proceedings below. Our review of her insufficiency-of-the-evidence claim, therefore, is limited to the sparse Record on Appeal (the record).

1. *The Operating-a-Motor-Vehicle-with-No-Motor-Vehicle-Insurance-Policy Offense*

■ Tarape relies on this court's ruling in *State v. Shamp,* 86 Hawai'i 331, 949 P.2d 171 (App.1997) (overruled on other grounds by *State v. Lee,* 90 Hawai'i 130, 976 P.2d 444 (1999)), in arguing that there was insufficient evidence that she operated a motor vehicle without a motor vehicle insurance policy. In *Shamp,* the borrower of a motor vehicle was convicted of operating the vehicle without a no-fault insurance policy. We held that

> the state of mind of a defendant is an element of an HRS § 431:10C–104 offense. Moreover, there is a statutory "reasonable belief" presumption underlying this element; the court must presume that the borrower of a motor vehicle reasonably believed that the vehicle was insured. Thus, in order to convict a defendant, the State must prove that the state of mind of a person who borrowed an uninsured motor vehicle was "knowing" or, in certain circumstances, "reckless."

*Shamp,* 86 Hawai'i at 334–35, 949 P.2d at 174–75.

In *Lee,* the defendant was similarly convicted of operating a vehicle without a no-fault insurance policy. However, "no evidence regarding the ownership of the vehicle was adduced at trial." *Lee,* 90 Hawai'i at 139, 976 P.2d at 453. The Hawai'i Supreme Court held that "a good faith lack of knowledge regarding the insured status of a bor-

---

9. Judge Sandra P. Schutte presided.

10. The record also includes an unfiled written Judgment, dated October 16, 2003.

rowed vehicle is a *defense* pursuant to HRS § 701–115 [ (1993) ]," and therefore the defendant "bore the burden of production with respect to it[.]" *Id.* at 140, 976 P.2d at 454. Because the defendant failed to present any evidence regarding motor vehicle ownership, the supreme court held that "the district court could reasonably have inferred from the fact that [the defendant] drove the vehicle without insurance that he did so either intentionally, knowingly, or recklessly." *Id.*

In the instant case, the record fails to indicate what evidence, if any, was adduced at trial regarding whether Tarape was a good-faith borrower of the Toyota. Although Tarape asserted in her opening brief that she presented oral testimony at trial regarding her status as a good-faith borrower,[11] she failed to order copies of the trial transcript to support her claim.

The police report on the reverse side of Citation 2 indicates that when Tarape was stopped and asked to show proof of insurance, she "stated that she [was] in [the] process of buying [the motor vehicle] and did not get insurance yet." While the report indicates that Tarape may not have been the registered owner of the Toyota at the time she was issued the citation, it provides clear evidence that Tarape was aware that the Toyota was uninsured, she was obligated to obtain insurance for the vehicle, and she had not yet obtained insurance. This evidence is sufficient to support the district court's conclusion that Tarape committed the offense of operating a motor vehicle without a motor vehicle insurance policy.

■ We note, however, that a no-motor-vehicle-insurance-policy offense may be a civil traffic infraction [12] if the prescribed penalty for the offense does not include imprisonment. *See* HRS § 291D–2 (1993). Pursuant to HRS § 431:10C–117(a)(5) (Supp.2004), the penalties for the offense of no motor vehicle

insurance policy may include imprisonment if a defendant has multiple convictions for the offense within a five-year period.

The record does not contain Tarape's traffic abstract, so we are unable to determine whether Tarape was subject to a prison sentence in this case. However, since she was fined $500, it appears that this might be her first no-motor-vehicle-insurance-policy offense. If such is the case, she should not have been found "guilty" of the offense. Instead, a civil judgment for Plaintiff–Appellee State of Hawai'i (the State) pursuant to HRS chapter 291D should have been entered against Tarape. *See State v. Rees,* 107 Hawai'i 508, 519, 115 P.3d 687, 698, 2005 WL 1253836 (App. No. 26470, May 27, 2005).

Accordingly, we vacate that part of the Judgment that found Tarape "guilty" of the offense of no motor vehicle insurance policy and remand this case for a determination by the district court as to whether Tarape was subject to a prison sentence for the no-motor-vehicle-insurance-policy offense. If she was, a judgment convicting Tarape of the offense may be re-entered. If this was Tarape's first offense within a five-year period, entry of a judgment for the State as to the traffic infraction of no motor vehicle insurance policy shall be entered instead.

### 2. *Fraudulent Use of Vehicle Plates*

■ Although Citation 1 charged Tarape with the offense of false license plate, in violation of HRS § 249–11, the district court found Tarape "guilty" of fraudulent use of vehicle plates.

HRS § 249–11, which is entitled "Fraudulent use of plates, tags, or emblems and other misdemeanors; penalties[,]" is a catch-all provision that defines various offenses related to motor vehicles and also sets forth penalties for violations of other statutory sec-

---

**11.** In her Opening Brief, Tarape asserts, without citing to the record, that she

pointed out to the court that she was not the owner of the car and had no knowledge as to the fraudulent plates and expired weight tax, and that the owner who had been trying to sell her the car had informed her that everything was valid and up-to-date, including no-fault

insurance on the vehicle prior to [Tarape] taking it for a test-drive.

**12.** HRS § 291D–2 (1993) defines "[t]raffic infraction" as "all violations of statutes, ordinances, or rules relating to traffic movement and control, including parking, standing, equipment, and pedestrian offenses, for which the prescribed penalties do not include imprisonment."

tions contained in HRS chapter 249. In relevant part, HRS § 249–11 provides:

**Fraudulent use of plates, tags, or emblems and other misdemeanors; penalties.** Any person ... who attaches to and uses on any vehicle plates ... not furnished in accordance with sections 249–1 to 249–13 or 286–53, or who fraudulently uses such number plates ... upon any vehicle other than the one for which the number plates ... were issued ... shall be fined not more than $500.

Based on the foregoing language, the district court could have found that Tarape violated HRS § 249–11 in one of two ways: (1) attaching to and using on a vehicle plates "not furnished in accordance with [HRS §§ ] 249–1 to 249–13 or 286–53," or (2) fraudulently using number plates on any vehicle other than the one for which the number plates were issued.

In the absence of any transcripts of the proceedings below in the record on appeal, we are unable to assess whether sufficient evidence was adduced to support the district court's determination that Tarape violated HRS § 249–11. Consequently, we will not disturb the district court's findings and conclusion. *State v. Goers*, 61 Haw. 198, 202–03, 600 P.2d 1142, 1144–45 (1979). However, inasmuch as the penalty for violating HRS § 249–11 is a fine of not more than $500, the HRS § 249–11 offense constitutes a traffic infraction and not a criminal offense. *See State v. Rees*, 107 Hawai'i 508, 519, 115 P.3d

687, 698, 2005 WL 1253836 (App. No. 26470, May 27, 2005).

Accordingly, we vacate that part of the Judgment that found Tarape "guilty" of fraudulent use of vehicle plates and remand for entry of a replacement judgment in favor of the State that complies with HRS chapter 291D, the statutes governing traffic infractions, as to this offense.

B. *The District Court Committed Plain Error by Convicting Tarape of the Offense of Delinquent Motor Vehicle Tax, in Violation of HRS § 249–10*

■ Tarape was charged with committing the offense of expired weight tax, in violation of HRS § 249–10, and "found ... guilty" and "sentenced" for delinquent motor vehicle tax.

However, HRS § 249–10 does not create the offense of expired weight tax or delinquent motor vehicle tax.[13] HRS § 249–10 authorizes the various county legislative bodies to establish a delinquency penalty that can be added to any delinquent motor vehicle taxes imposed by HRS sections 249–1 to 249–13:[14]

**Delinquent penalties; seizure and sale for tax.** (a) *Any tax imposed by sections 249–1 to 249–13 for any year and not paid when due, shall become delinquent and a penalty shall be added to, and become part of, the delinquent tax. The amount of the delinquency penalty shall be established by the county's legislative body. If the*

---

**13.** The offense of using a motor vehicle with a delinquent motor vehicle tax is set forth in HRS §§ 249–2 (2001) and 249–11 (2001). Pursuant to HRS § 249–2 (2001), motor vehicles are subject to a weight tax.
   **Imposition of tax.** Except as otherwise provided in sections 249–1 to 249–13, and except in the case of antique motor vehicles which shall be subject to an annual tax of $10 in lieu of the annual tax otherwise imposed by this section, all vehicles and motor vehicles as defined in section 249–1, shall be subject to an annual tax, computed, except for the minimum tax provided for in section 249–13 according to the net weight of each vehicle at a rate determined as hereinafter provided in section 249–13. The tax shall become due and payable on January 1 and must be paid before April 1, in each year. The tax shall be paid by the owner of each vehicle in the county in which the vehicle is located at the time of registration, whether the original registration or any subse-

quent registration, and shall be collected by the director of finance of such county; provided that if any such vehicle is transported to another county after the payment of such tax, no additional tax shall be imposed on such vehicle for the remaining period of the year for which such tax has been paid.
   Pursuant to HRS § 249–11 (2001), "any person who knowingly uses a motor vehicle, the tax upon which is delinquent, upon public highways of this State, ... or any person who violates any of the provisions of [sections 249–1 to 249–13] shall be fined not more than $500."

**14.** The various county councils have enacted ordinances establishing delinquency penalties. *See* Revised Ordinances of Honolulu § 41–17.2, Code of the County of Maui § 3.24.030(C), Hawai'i County Code § 24–18(b), and Kaua'i County Code § 5–2.5.

date that the tax is due is a Saturday, Sunday, or legal holiday, the tax shall become delinquent at the end of the next day that is not a Saturday, Sunday, or legal holiday. The director of finance may require the payment of any delinquent tax and penalty as a condition precedent to the registration, renewal, or transfer of ownership of such vehicle.

HRS § 249–10 (emphasis added). HRS § 249–10 also allows the seizure and storage of a vehicle that does not have the number plates required by HRS §§ 249–1 to 249–13, or upon which taxes are delinquent, subject to redemption by the vehicle's owner upon payment of the delinquent taxes and costs of storage and other seizure-related charges.

Therefore, Tarape was improperly found guilty of violating HRS § 249–10, and we reverse that part of the Judgment that found Tarape "guilty" of delinquent motor vehicle tax. *See State v. Sakoda,* 1 Haw.App. 298, 618 P.2d 1148 (1980) (reversing a conviction for leaving the scene of an accident involving damage to vehicle or property, in violation of HRS § 291C–13 (1976), when the evidence was that personal injury resulted from the accident and prosecution should have therefore been brought under HRS § 291C–12 (1976)).

### C. *The District Court's Failure to Comply with the Statutory Requirements of HRS § 805–13(b)*

█ Tarape claims that the district court committed reversible error by failing to follow the procedural mandates set forth in HRS § 805–13(b). More specifically, Tarape argues that her conviction should be overturned because Officer Serrao failed to cite the registered owner of the Toyota and the district court failed to require the appearance of the registered owner in court. We disagree.

In *Lee,* the Hawai'i Supreme Court held that a district court's failure to comply with HRS § 805–13(b) does not constitute reversible error. *Lee,* 90 Hawai'i at 140–41, 976 P.2d at 454–55. The supreme court explained that

it is clear from the structure of HRS § 431:10C–104 that the "proper defendant"

may be either a vehicle's owner, or its operator, or both. As the *Shamp* court further observed, the legislature's stated purpose underlying the bill that enacted HRS § 805–13 was to "provide the necessary teeth to the no-fault enforcement provision and reduce the uninsured motorist population." Inasmuch as the presence of the registered owner is not required to prove that a defendant has violated HRS § 431:10C–104(a) by operating without no-fault insurance, it would violate the spirit of the legislation to hold that the owner's absence constitutes a basis for overturning the operator's conviction. Although, as the ICA did in *Shamp,* we "encourage prosecutors, the district courts, and enforcement officers to follow the procedures set forth in HRS § 805–13(b)," *we hold that a violation of those procedures is not reversible error with respect to the conviction of an operator of an uninsured vehicle.*

*Lee,* 90 Hawai'i at 141, 976 P.2d at 455 (citations, brackets, and ellipsis omitted; emphasis added). Accordingly, Officer Serrao's failure in the instant case to cite the registered owner of the Toyota and the district court's failure to require the registered owner to appear in court did not constitute reversible error.

### CONCLUSION

For the reasons discussed above, we reverse that part of the Judgment that found Tarape "guilty" of· delinquent motor vehicle tax. We also vacate that part of the Judgment that found Tarape "guilty" of the fraudulent-use-of-vehicle-plates offense and remand this case for entry of a replacement judgment in favor of the State as to this traffic infraction. *See* HRS § 291D–8(a)(4) (Supp.2004). Finally, we vacate that part of the Judgment that found Tarape "guilty" of no motor vehicle insurance policy and remand with instructions that the district court determine whether Tarape was subject to a prison sentence for the offense. If Tarape was not subject to a prison sentence for the no-motor-vehicle-insurance-policy offense, the district court shall enter a replacement judgment in favor of the State as to this traffic infraction. *Id.* If Tarape was subject

to a prison sentence for the offense, a judgment convicting and sentencing Tarape for the no-motor-vehicle-insurance-policy offense shall be re-entered.

**Concurring and Dissenting Opinion by FOLEY, J.**

Pro se Defendant–Appellant Donna May Tarape (Tarape) contends her convictions are not "supported by substantial evidence." Tarape additionally contends the district court committed "reversable [sic] error by failing to follow the procedural mandates" set forth in Hawaii Revised Statutes (HRS) § 805–13 (Supp.2004) in that "the police officer issuing the citations failed to cite the registered owner, and the District Court failed to require the registered owner to appear in court."

There are no transcripts in the record of any district court proceeding. Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 10(b)(1)(A) and (3),[1] Tarape

"had a duty to include the relevant transcripts of proceedings as a part of the record on appeal." *Lepere v. United Pub. Workers, Local 646,* 77 Hawai'i 471, 474, 887 P.2d 1029, 1032 (1995). "Because the record on appeal does not contain any transcripts of the relevant hearings, ... we therefore have an insufficient basis in the record before us to conclude" (*Id.*) that Tarape's convictions are not supported by substantial evidence and that the district court failed to follow the procedural mandates set forth in HRS § 805–13 as contended by Tarape.

Therefore, I would affirm.

---

1. Hawai'i Rules of Appellate Procedure Rule 10(b)(1)(A) and (3) provides:

    **Rule 10.   The record on appeal.**
    . . . .
    (b) *The transcript of proceedings.*
    (1) REQUEST TO PREPARE TRANSCRIPT.
    (A) When an appellant desires to raise any point on appeal that requires consideration of the oral proceedings before the court or agency appealed from, the appellant shall file with the clerk of the court appealed from, within 10 days after filing the notice of appeal, a request

    or requests to prepare a reporter's transcript of such parts of the proceedings as the appellant deems necessary that are not already on file.
    . . . .
    (3) DUTY OF THE APPELLANT IN INSUFFICIENCY OF THE EVIDENCE APPEALS. If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant shall include in the record a transcript of all evidence relevant to such finding or conclusion.